## THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | | |
|---|---|---|---|
| STATE OF DELAWARE, | ) | | |
| | ) | | |
| v. | ) | ID No. | 1909015360 |
| | ) | | |
| OSCAR OLAN ROSAS, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM ORDER

On this 10th day of March, 2021, upon consideration of Defendant, Oscar Olan Rosas' ("Defendant") Motion to Dismiss and/or Reduction of Bail (the "Motion"),[1] the State's Response,[2] and the record in this case, it appears to the Court that:

1. On December 13, 2018, the victim in this case disclosed to her mother that she was assaulted by her paternal uncle, Defendant, approximately four years prior. On December 14, 2018, the victim's mother reported the incident to DFS. Following the report, a forensic interview was conducted of the victim at the Children's Advocacy Center of Delaware on January 2, 2019.

2. On September 25, 2019, the State authorized the arrest of Defendant, and he was arrested in the State of Florida by the U.S. Marshall's Task Force, on or about October 22, 2019.

---

[1] D.I. 17 [hereinafter "Def.'s Mot."].
[2] D.I. 18 [hereinafter "State's Resp."]

3. On January 8, 2020, Defendant filed a Motion to Dismiss for lack of indictment. On January 9, 2020, the State received Defendant's Motion. On that date, the State advised defense counsel that the case was already scheduled to be heard by the New Castle County Grand Jury on January 21, 2020.

4. On January 21, 2020, Defendant was indicted on the following offenses: Rape in the First Degree, Sexual Abuse of a Child by a Person in a Position of Trust, Authority or Supervision, Dangerous Crime Against a Child and Unlawful Sexual Contact First Degree.

5. On March 4, 2020, a scheduling order was issued by this Court, setting a trial date of September 9, 2020. However, the trial date was postponed due to the several orders issued by the Delaware Supreme Court and the Delaware Superior Court declaring a judicial emergency.

6. On March 12, 2020, Governor John Carney issued a Declaration of a State of Emergency for the State of Delaware due to the Public Threat created by COVID-19.[3] On March 13, 2020, the Delaware Supreme Court issued an Order Declaring Judicial Emergency, specifically ordering that "all time requirements under the Speedy Trial Guidelines are hereby tolled."[4] On March 22, 2020, the Supreme Court issued Administrative Order Number 3, which closed all

---

[3] Declaration of a State of Emergency for the State of Delaware Due to a Public Health Threat, (Mar. 12, 2020), https://governor.delaware.gov/health-soe/state-of-emergency/.
[4] Order Declaring a Judicial Emergency, Seitz, C.J. (Del. Mar. 13, 2020).

courthouses in the State of Delaware to the public from March 23, 2020 until April 15, 2020 or further order of the Chief Justice of the Supreme Court.[5] Subsequent extensions of this Order, have resulted in suspension and delays of grand jury proceedings up until April 3, 2021.[6]

7. On January 29, 2021, Defendant filed this Motion to Dismiss and/or for Reduction of Bail, asserting a lack of a speedy trial. The State filed its Response in Opposition to the Motion on February 8, 2021.

## Defendant's Motion to Dismiss for Lack of a Speedy Trial

8. Under the Sixth Amendment of the U.S. Constitution, there exists a constitutional right to a speedy trial.[7] There is a parallel right provided in the Delaware Constitution, Article 1, section 7.[8] Delaware Courts evaluate constitutional speedy trial claims under the analysis established by the U.S.

---

[5] Administrative Order No. 3, In re: COVID-19 Precautionary Measures (Del. Mar. 22, 2020).
[6] Administrative Order No. 4, In re: COVID-19 Precautionary Measures (Del. Apr. 14, 2020); Administrative Order No. 6, In re: COVID-19 Precautionary Measures (Del. May 14, 2020); Administrative Order No. 7, In re: COVID-19 Precautionary Measures (Del. June 5, 2020); Administrative Order No. 9, In re: COVID-19 Precautionary Measures (Del. Aug. 5, 2020); Administrative Order No. 10, In re: COVID-19 Precautionary Measures (Del. Sept. 4, 2020); Administrative Order No. 11, In re: COVID-19 Precautionary Measures (Del. Oct. 2, 2020); Administrative Order No. 12, In re: COVID-19 Precautionary Measures (Del. Nov. 2, 2020); Administrative Order No. 13, In re: COVID-19 Precautionary Measures (Del. Nov. 16, 2020); Administrative Order No. 14, In re: COVID-19 Precautionary Measures (Del. Dec. 2, 2020); Administrative Order No. 15, In re: COVID-19 Precautionary Measures (Del. Dec. 30, 2020); Administrative Order No. 16, In re: COVID-19 Precautionary Measures (Del. Jan. 28, 2021); Administrative Order No. 17, In re: COVID-19 Precautionary Measures (Del. Mar. 4, 2021).
[7] U.S. Const., Amend. VI.
[8] Del. Const., Art. 1, § 7.

Supreme Court in *Barker v. Wingo* ("*Barker*").[9]  Under *Barker*, speedy trial claims are assessed using a four-pronged balancing test examining: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant."[10]

9.  In addressing Defendant's Motion to Dismiss, the Court looks to the first factor of the *Barker* analysis:  the length of delay.  A determination of the length of delay must be made before undertaking a full assessment of the three remaining *Barker* factors. The Delaware Supreme Court has stated that "[t]he length of the delay is the trigger that necessitates the consideration of the other three Barker factors. [U]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiring into the other factors that go into the balance.'"[11]  A defendant's right to speedy trial attaches at the moment of his arrest, indictment or information, whichever comes first.  In this case, the Defendant was arrested in Florida on October 22, 2019.  The first trial date was scheduled for September 9, 2020, which is less than one year from his arrest.  On August 13, 2020, the State tendered a plea offer to defense counsel, prior to the first case review date which was scheduled on August 20, 2020.  On August 13, 2020, a First Case Review

---

[9] 407 U.S. 514 (1972).

[10] *Middlebrook v. State*, 802 A.2d 268, 273 (Del. 2002) (citing *Barker*, 407 U.S. at 530).

[11] *Dabney v. State,* 953 A.2d 159, 164 (Del. 2008) (quoting *Hughey v. State*, 522 A.2d 335, 341 (Del. 1987) (citing *Barker*, 407 U.S. at 530))

Waiver was filed, and Defendant set the case for Final Review.[12] To date, no trial date has been set. The Court takes into account that the initial trial date was set to occur within one year of Defendant's arrest, but it was postponed and not yet rescheduled which takes it beyond a year of his arrest. Hence, the delay is presumptively prejudicial and necessitates consideration of the remaining *Barker* factors.

10. The Court next addresses the second factor of the *Barker* analysis: the reason for the delay. The delay in this case is a direct result of the pandemic. Although the pandemic has delayed Defendant's trial date, and has diminished the ability for the parties to engage in productive case reviews, the extended delay does not weigh against the State. According to the Emergency Judicial Order "all time requirements under the Speedy Trial Guidelines are hereby tolled."[13] This issue was recently addressed in *State v. Duonnolo*,[14] where this Court denied the defendant's motion to dismiss for lack of a speedy trial.

11. In *Duonnolo*, the Court considered the federal Speedy Trial Act.[15] In reaching its conclusion to deny the defendant's motion to dismiss, the Court noted that "[e]very federal court that has dealt with a speedy trial argument in light of the coronavirus pandemic has held that the delay caused by the closing of courthouses

---

[12] D.I. 15.

[13] Order Declaring a Judicial Emergency, Seitz, C.J. (Del. Mar. 13, 2020).

[14] 2020 WL 2467077 (Del. Super. May 13, 2020).

[15] *Id.* at *2.

5

and unavailability of juries is 'excludable time' for purposes of the federal Speedy Trial Act."[16]  In furtherance of theses findings, the delay in this case cannot be attributed to the State, or anything other than the COVID-19 pandemic.  Therefore, this factor does not weigh against the State.

12.  The Court next addresses the third factor of the *Barker* analysis:  the assertion of the right to a speedy trial by the accused.  Defendant first moved to dismiss his case on January 8, 2020 on the basis of a failure to indict.  That issue was rendered moot, however, because the matter was already scheduled and was indicted on January 21, 2020. Subsequently, Defendant asserted his speedy trial rights in this Motion.  However, the reason behind the delay of Defendant's trial is so compelling and outside of the control of either party, that the Court does not assign significant weight to Defendant's assertion of this right.  Hence, this factor balances out in favor of both parties.

13.  Finally, the Court addresses the last factor of the *Barker* analysis:  the prejudice to the accused.  In *Middlebrook v. State*,[17] the Delaware Supreme Court noted that in assessing prejudice under *Barker*, courts must consider:  "(1)

---

[16] *Duonnolo*, 2020 WL 2467077, at *2 (citing *United States v. Kemprud*, 2020 WL 2128585 (E.D. CA May 5, 2020) (time exclusion granted in light of the emergence of coronavirus and the dangers to the public); *United States v. Rubaba*, 2020 WL 1446910 (D. Kan. Mar. 25, 2020); *United States v. Lynch*, 2020 WL 1492827 (M.D. Ala. Mar. 24, 2020) (finding that the ends of justice served by granting a continuance of this trial outweigh the interest of the public and the Defendant in a speedy trial); *United States v. Hughes*, 2020 WL 1331027 (W.D. Wash. Mar. 23, 2020)).

[17] 802 A.2d 268 (Del. 2002).

preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defenses will be impaired."[18] In this case, the delay at issue is not attributable to the State, but rather to the Judicial Emergency that has impacted the scheduling of criminal trials.

14. Further, the Court is not convinced by Defendant's arguments that his pretrial detention is especially oppressive because of COVID-19. First, Defendant has not highlighted any inherent health issues that make him more uniquely at risk in these circumstances. Second, the Department of Correction ("DOC") has undergone various efforts and steps to prevent and minimize the spread of COVID-19 within the correctional institutions, since the inception of the pandemic. Moreover, as stated by this Court in *Duonnolo*, although incarceration itself is considered prejudicial, such prejudice is "suffered by all pretrial detainees . . . ."[19] Third, even though Defendant's trial has not yet been scheduled, at this time the expectation is that trials will resume in the not too distant future. Importantly, it bears repeating and re-emphasizing that the delay is solely based on the coronavirus pandemic that necessitated closures and postponements beyond the control of anyone.

---

[18] *Middlebrook*, 802 A.2d at 276.
[19] *Duonnolo*, 2020 WL 2467077, at *2.

Thus, the Court finds that Defendant has failed to establish that the prejudice he articulates is especially oppressive, unique to his case or rises to a level that warrants dismissal. Therefore, this factor weighs against Defendant.

Defendant has not set forth a valid basis to establish that he has been unconstitutionally denied his right to a speedy trial. Accordingly, Defendant's Motion to Dismiss is **DENIED**.

## Defendant's Motion for Bail Reduction

15. The Court next considers Defendant's request for a reduction in bail. The Eighth Amendment to the United States Constitution and Article 1, Section 11 of the Delaware Constitution provide that excessive bail shall not be required.[20] The Eighth Amendment's prohibition against excessive bail is applicable to the states through the due process clause of the Fourteenth Amendment.[21]

16. Defendant is currently held on $270,000 cash bail that was imposed after his return to Delaware following his apprehension by the Marshall's Task Force in the State of Florida. Such bail was issued to ensure Defendant's appearance at trial and to ensure the safety of the victim and the public.

17. The Court acknowledges Defendant's financial hardships and previously limited criminal background. However, Defendant is charged with violent sexual offenses against a minor child who was living with her family in

---

[20] U.S. Const., Amend. VIII; Del. Const., Art. 1, § 11.
[21] *Sistrunk v. Lyons*, 646 F.2d 64, 70 (3d Cir. 1981).

8

Defendant's apartment.  Further, Defendant's action of moving to Florida, days after his confrontation with the victim's mother, indicate that he may be a flight risk.  This risk is exacerbated by the fact that Defendant is facing significant minimum mandatory jail time if convicted.[22]

18.  Further, although the Court acknowledges Defendant's concerns surrounding the Coronavirus, as stated previously, DOC has taken aggressive measures to minimize and prevent the spread within correctional institutions.  Defendant has not presented any immediate health risks that require him to be isolated.

Accordingly, Defendant's Motion to for Bail Reduction is also **DENIED**.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge

Original to Prothonotary

Cc:  Oscar Olan Rosas (SBI #00919410)
Monika G. Germono, Esq.
Cari Chapman, Esq.
Investigative Services

---

[22] *See* 11 *Del. C.* § 773; *see also* 11 *Del. C.* § 778(1) or (2).

9